Jordan L. Lurie (SBN 130013)
Jordan.Lurie@capstonelawyers.com
David L. Cheng (SBN 240926)
David.Cheng@capstonelawyers.com
Tarek H. Zohdy (SBN 247775)
Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
Cody.Padgett@capstonelawyers.com
Sharon Yaacobi (SBN 280760)
Sharon.Yaacobi@capstonelawyers.com
Capstone Law APC
1840 Century Park East, Suite 450
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiff Chris Aguilar

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS AGUILAR, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC, a Delaware Limited Liability Company,<br><br>Defendant. | Case No.:  CV 13-00437-LJO-GSA<br><br>Hon. Lawrence J. O'Neill<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:          July 23, 2013<br>Time:          8:30 a.m.<br>Place:         Courtroom 4<br>Trial Date:    None Set |

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................................... 1

II.    FACTS AND PROCEDURE ..................................................................................... 2

III.   LEGAL STANDARDS .............................................................................................. 4

    A.   Rule 12(b)(6) ..................................................................................................... 4

    B.   Rule 9(b) ............................................................................................................ 5

IV.    ARGUMENT ............................................................................................................. 6

    A.   Plaintiff's FAC Adequately Pleads a Claim for Relief under the CLRA ............... 6

        1.   Plaintiff Has Adequately Alleged Existence of a Defect ............................... 7

        2.   Plaintiff Has Adequately Alleged Existence of a Safety Concern ................. 8

        3.   Plaintiff Has Adequately Alleged a Causal Connection Between the Defect and
the Safety Concern ...................................................................................... 12

        4.   Plaintiff Has Adequately Alleged Defendant's Knowledge of the Defect at the
Time of Sale ................................................................................................. 12

    B.   Plaintiff's FAC Adequately Pleads a Claim for Relief under the UCL ............... 16

        1.   Unlawful Prong ............................................................................................ 17

        2.   Unfair Prong ................................................................................................ 17

        3.   Fraudulent Prong ......................................................................................... 18

    C.   Plaintiff's FAC Adequately Pleads a Claim for Breach of Implied Warranty Pursuant
to the Song-Beverly Act .................................................................................. 18

        1.   Plaintiff Does Not Seek to Extend the Duration of the Implied Warranty ...... 18

        2.   Defendant's Limited Warranty Cannot Serve to Limit Plaintiff's Remedies
under the Song-Beverly Act .......................................................................... 20

    D.   Plaintiff's FAC Adequately Pleads a Claim for Breach of Express Warranty Pursuant
to the UCC ....................................................................................................... 21

    E.   Plaintiff's FAC Adequately Pleads a Claim for Breach of Warranty Pursuant to the
Magnuson-Moss Warranty Act ........................................................................ 24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

F.      In the Alternative, if the Court is Inclined to Grant Any Part of Defendant's Motion, Plaintiff Should Be Granted Leave to Amend..........................................................................24

V.      CONCLUSION ...............................................................................................................25

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. 663 (2009) ......................................................................... 5

*Avedisian v. Mercedes-Benz USA, LLC*, 2013 U.S. Dist. LEXIS 73444 (C.D. Cal. May 22, 2013).......................................................................................................................... 15

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007)...................... 6

*Banks v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 37754 (N.D. Cal. Mar. 20, 2012)......................... 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 5, 10

*Belle v. Chrysler Group, LLC*, 2013 U.S. Dist. LEXIS 59221 (C.D. Cal. Jan. 29, 2013) ........................ 11

*Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 31350 (E.D. Cal. Apr. 10, 2007) ........................ 8

*California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th Cir. 2003)............................................ 19

*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (2011) ................................................. 7, 12

*Cirulli v. Hyundai Motor Co.*, 2009 U.S. Dist. LEXIS 125139 (C.D. Cal. Jun. 12, 2009)............ 11, 14, 16

*Comerica Bank v. McDonald*, 2006 U.S. Dist. LEXIS 86306 (N.D. Cal. Nov. 20, 2006) ........................ 5

*Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152 (9th Cir. 2012).......................................................... 17

*Dickerson v. Electrolux Home Prods., Inc.*, 2011 U.S. Dist. LEXIS 26994 (C.D. Cal. 2011)........................................................................................................................... 15

*Ehrlich v. BMW of N. Am.*, 801 F. Supp. 2d 908 (2010) ....................................................passim

*Eisen v. Porsche Cars N. Am., Inc.*, 2012 U.S. Dist. LEXIS 116836 (C.D. Cal. Feb. 22, 2012)............................................................................................................................ 7, 8

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (2012) .............................................. 20

*Falk v. GMC.*, 496 F. Supp. 2d 1088 (2007).............................................................passim

*Feldman v. Mercedes-Benz United States, LLC*, 2012 U.S. Dist. LEXIS 178924 (D.N.J. Dec. 18, 2012)........................................................................................................... 11

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................................... 25

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)........................................... 4

*Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 82746 (C.D. Cal. Jun. 12,

2013) ............................................................................................................8, 13, 15

*Ho v. Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 35748 (N.D. Cal. Mar. 14, 2013) ................11, 16, 18

*Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 19215 (S.D.
   Cal. Feb. 13, 2012) ............................................................................................. 23

*In re General Motors Corp,* Case No. 09-50026 (Bankr. S.D.N.Y. July 5, 2009).................................... 2

*In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801 (2012) ............................................................ 11

*In re Rockefeller Ctr. Prop., Inc. Sec. Litig.*, 311 F.3d 198 (3d Cir. 2002) .................................... 6

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758
   F. Supp. 2d 1077 (2010)....................................................................................... 22

*In re Sony VAIO Computer Notebook Trackpad Litig.*, 2010 U.S. Dist. LEXIS 115142
   (S.D. Cal. 2010) .................................................................................................. 15

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods.
   Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010) ....................................................passim

*In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152 (C.D. Cal. 2011) ............................................. 7

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)............................................................ 5

*Keegan v. Am. Honda Motor Co*, 838 F. Supp. 2d 929 (C.D. Cal. 2012)...............................11, 12

*Kowalsky v. Hewlett Packard Co.*, 771 F. Supp. 2d 1138 (N.D. Cal. 2010) .................................. 15

*Kowalsky v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 89379 (N.D. Cal. Aug. 10,
   2011)......................................................................................................13, 14, 15, 16

*Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013 (2011)...........................................19, 20

*Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012 (C.D. Cal. May
   4, 2009).........................................................................................................9, 12

*Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309 (2011) .............................................. 10

*Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr.
   18, 2011)....................................................................................................13, 16

*Moore v. Kayport Package Express, Inc.*, 885 F.2d 531 (9th Cir. 1989)....................................... 5

*Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406 (3d
   Cir. 2003).......................................................................................................... 5

*Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994) ................................................................... 5, 7, 10

*Neubronner v. Milken*, 6 F.3d 666 (9th Cir. 1993) ...................................................................... 6

*Parkinson v. Hyundai Motor Am.,* 258. F.R.D. 580 (C.D. Cal. 2008) ........................................ 8

*Rice v. Sunbeam Prods.*, 2013 U.S. Dist. LEXIS 7467 (C.D. Cal. Jan. 7, 2013) ...................... 20

*Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) ............................................................................................................................... 23

*Stearns v. Ticketmaster Corp. et al.*, 655 F.3d 1013 (9th Cir. 2011) ........................................ 8

*United States v. Redwood City*, 640 F.2d 963 (9th Cir. 1981) ................................................... 4

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ........................................... 5, 17

*Wilson v. Hewlett Packard Co.*, 668 F.3d 1136 (9th Cir. 2012) ...................................... 8, 11, 14

**STATE CASES**

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999) ................ 17

*Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197 (1983) ................. 18

*Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2006) .................... 11, 22

*Donlen v. Ford Motor Co.*, 2013 Cal. App. LEXIS 474 (Cal. App. 3d Dist. June 14, 2013) ............................................................................................................................. 8, 23

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009) ...................................................................... 18

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991) ................................... 19

*Kwan v. Mercedes-Benz of North America, Inc.*, 23 Cal. App. 4th 174 (1994) ........................ 21

*Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009) ........................................ 19, 20

*Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So. 2d 319 (1972) ............................................................................................................................... 24

*Oregel v. American Isuzu Motors*, Inc., 90 Cal. App. 4th 1094 (2001) ...................................... 8

*Rester v. Morrow*, 491 So. 2d 204 (1987) ............................................................................... 24

*Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th 785 (2006) ...... 24

*State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093 (1996) ................. 17

*Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010) ............................................. 21

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**FEDERAL STATUTES**

15 U.S.C. §§ 2301 *et seq.* (Magnuson-Moss Warranty Act (MMWA)) ..........................................2, 17, 24

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................................4

Fed. R. Civ. P. 15(a)(2) .......................................................................................................................... 24

Fed. R. Civ. P. 9(b) ...............................................................................................................5, 12, 13, 17

**STATE STATUTES**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ......................................1, 16, 17, 18

Cal. Civ. Code §§ 1750 *et seq.* (Cons. Legal Remedies Act (CLRA)) .............................................passim

Cal. Civ. Code §§ 1790-1795.8 (Song-Beverly Consumer Warranty Act (SBCWA)) ....................passim

**SECONDARY AUTHORITIES**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* (3d ed.
2004) ....................................................................................................................................................... 5

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") makes baseless assertions that belie the plain allegations in the First Amended Complaint ("FAC"), conflates issues, and, at times, flatly misapplies the law.  This case arises from a potentially catastrophic defect in 2009, 2010, 2011 and 2012 Chevrolet Traverses, Buick Enclaves and GMC Acadias sold in the United States (the "Class Vehicles"): the steering wheel locks up, causing pulling to the right or left and resulting in loss of steering control (the "Steering Defect").  Plaintiff Chris Aguilar ("Plaintiff") experienced the Steering Defect four times, including three within the first year of ownership and all within Defendant's express Limited Warranty.  As detailed below, Defendant General Motors LLC's ("Defendant") was aware of the Steering Defect before the Class Vehicles were sold, and it is not necessary for a fatal accident actually to have occurred in order for Plaintiff to sufficiently allege that the defect poses a safety risk.

Plaintiff's Consumers Legal Remedies Act ("CLRA") claim is sufficiently pleaded.  Contrary to Defendant's contentions, Plaintiff adequately alleges 1) the existence of a defect, namely the Steering Defect; 2) that the Steering Defect poses the safety concern that consumers get in car accidents and injure themselves or others; 3) that the defect and safety concern are causally connected in that the Steering Defect causes steering instability and failure, among other things, which could lead to car accidents; and 4) that Defendant knew or, with the exercise of reasonable care, should have known of the Steering Defect prior to Plaintiff's purchase through various sources, including, but not limited to, at least six Technical Service Bulletins ("TSBs") issued by Defendant concerning steering issues, consumer complaints to Defendant, its dealers, various websites, and the National Highway Traffic Safety Administration ("NHTSA"), pre-release testing data, dealership repair orders, and/or other internal sources.  It follows that Plaintiff's Unfair Competition Law ("UCL") claim, which Defendant does not even independently address despite it being subject in part to a lower pleading standard, is also sufficiently pleaded.

Likewise, Defendant does not make any meritorious arguments regarding Plaintiff's warranty claims.  Plaintiff sufficiently pleads his express warranty claim under the California Uniform Commercial Code ("UCC") in that he sought repairs in compliance with Defendant's express Limited

1   Warranty but did not receive the benefit of his bargain because Defendant failed to correct the Steering

2   Defect within the warranty period.  Defendant curiously argues that Plaintiff's claim for breach of the

3   implied warranty of merchantability under the Song-Beverly Consumer Warranty Act ("Song-Beverly

4   Act") expired two years ago despite Plaintiff's clear allegations that the Steering Defect manifested

5   within the one-year warranty period and it is well-settled that the claim carries a four year statute of

6   limitations.  Defendant also improperly relies on case law interpreting the UCC to argue that Plaintiff's

7   remedies are limited by Defendant's express Limited Warranty, although such limitations are expressly

8   prohibited by the Song-Beverly Act.  Finally, Plaintiff's claim under the Magnuson-Moss Warranty Act

9   is sufficiently pleaded because it is based on his other warranty claims, which are sufficiently pleaded.

10      For the reasons set forth more fully below, the detailed FAC more than sufficiently states claims

11  for relief on behalf of Plaintiff and a class of similarly situated consumers.

12  **II.      FACTS AND PROCEDURE**

13      Plaintiff's action concerns Defendant's failure to disclose that certain vehicles[1] it designs,

14  manufactures, distributes, markets, services, repairs, sells and leases contain a steering defect, which

15  manifests while driving in the form of the steering wheel locking, loss of power steering, hard steering,

16  forceful pulling to the left and right, knocking, bumping, or grinding noises, steering wheel instability,

17  and/or total steering wheel failure.  (FAC ¶¶ 28, 31, 45.)  The Steering Defect poses a very obvious

18  safety risk to drivers, passengers, other motorists, and pedestrians.  (FAC ¶¶ 2-4, 7- 9, 14, 27, 28, 45, 46,

19  56, 83.)  Specifically, the sudden and unexpected loss of steering control can cause collisions resulting in

20  personal injury or death.  (FAC ¶ 46.)  In fact, as documented by complainants on NHTSA and

21  Edmunds, some near collisions have already occurred.  (FAC ¶ 46.)

22      Defendant was aware of the Steering Defect before the Class Vehicles were sold.  Between

23  February 2009 and February 2010, GM issued at least six (6) TSBs (PIT4537C, PIT4879A, 09-02-34-

24  001A, PI0029A, PIT4985 and PIT4632A), not including iterations and updates thereto, which addressed

25

26      [1] The term "Class Vehicles" shall refer to all 2009 through 2012 GMC Acadia, Buick Enclave,
    and Chevrolet Traverse vehicles that were manufactured and sold after July 10, 2009, the date of the
27  closing of the bankruptcy styled *In re General Motors Corp. et al*, administered in the United States
    Bankruptcy Court for the Southern District of New York.  *See In re General Motors Corp,* Case No. 09-
28  50026 (Bankr. S.D.N.Y. July 5, 2009).  (FAC ¶ 1; fn 1.)

problems with the Class Vehicles' steering system including, but not limited to, whining or moaning from the power steering, squeaking or rattling from the steering column, squeaking, moaning, or rubbing noises when turning the steering wheel, and clunking or knocking noise from the steering column when turning.  (FAC ¶¶ 49-50.)  None of these TSBs have succeeded in repairing the Steering Defect.  (FAC ¶¶ 49-50.)[2]

Additionally, Defendant has known of the Steering Defect at least since June 2010 through having regularly surveyed, researched and communicated with Class Vehicle owners regarding issues they were having with their vehicles on http://www.acadiaforum.net, an internet forum devoted to Defendant's vehicles.  (FAC ¶ 51.)  Upon information and belief, Defendant also had knowledge of the Steering Defect through having monitored, surveyed, and researched numerous third party websites, blogs, publications, and forums.  (FAC ¶ 51.)

Plaintiff also alleges that he is informed and believes that Defendant also knew of the Steering Defect at least as early as 2008 through pre-release testing data, alarming failure rates, customer complaints to Defendant and its dealers, dealership repair orders, as well as through other internal sources.  (FAC ¶¶ 16, 48, 57.)  Additionally, as recently as March of 2012, Defendant issued an article titled "Steering Gear Replacement Guidelines" in GM Tech Link[3] addressing problems with the steering system in Class Vehicles and referencing four different TSBs as possible repairs.  (FAC ¶ 52.)

Further, numerous consumers have complained about the Steering Defect to NHTSA as well as on various websites.  (FAC ¶¶ 46, 51.)  Many complainants reported of problems with their vehicle's steering system, sought and obtained repairs that did not cure the Steering Defect, and almost got in car accidents or otherwise did not feel safe driving with the Steering Defect.  (FAC ¶ 46.)

Like other purchasers of the Class Vehicles, Defendant's conduct affected Plaintiff.  On or around May 7, 2010, Plaintiff financed and purchased a 2010 Chevrolet Traverse from Hedrick Chevrolet, an authorized Chevrolet dealer in Clovis, California.  (FAC ¶ 20.)  Plaintiff considered passenger safety, including the safety of his grandchildren who he planned to transport, a determining

---

[2] Defendant may have issued additional TSBs relating to the Steering Defect other than those listed above but none have fixed the problem.  (FAC ¶ 50.)

[3] GM Tech Link is self-described as a "monthly publication for GM Dealership Service Professionals."  (FAC ¶ 52.)

1  factor in the purchase of his vehicle.  (FAC ¶ 21.)  Indeed, Plaintiff took time and care to research the

2  Chevrolet Traverse by reviewing Defendant's advertising and brochures and asking the dealership

3  questions regarding the car's safety for the driver and passengers.  (FAC ¶¶ 21-22.)  Nowhere in the

4  materials reviewed or information conveyed did Defendant disclose the existence of the Steering Defect.

5  (FAC ¶¶ 9, 44, 57, 82, 86, 103.)

6      Plaintiff has had recurring problems with the steering system in his car,[4] forcing him to seek

7  repairs for the Steering Defect *four times—three within the first year ownership and all within*

8  *Defendant's Limited Warranty*.  (FAC ¶¶ 24-27.)  On each occasion Plaintiff took his vehicle in to one of

9  Defendant's authorized dealers and even tried two different ones.  (FAC ¶¶ 24-27.)  Despite providing

10  Defendant several opportunities to repair, Plaintiff continues to experience the same steering issues with

11  his car, including loss of power steering, hard steering, forceful pulling to the left and right, and loss of

12  steering control, as if the front end of the vehicle is floating or gliding while driving.  (FAC ¶ 28.)

13      While Defendant knew, or with the exercise of reasonable care should have known, that the

14  Class Vehicles contained the Steering Defect prior to 2008, or at least as early as February 2009,

15  Defendant failed to disclose this material information to Plaintiff and Class Members.  (FAC ¶¶ 9, 44,

16  57, 82, 86, 103.)  Had Defendant not actively concealed or omitted this material information, Plaintiff

17  and Class Members would not have purchased or would have paid less for the Class Vehicles.  (FAC

18  ¶¶ 29, 55, 88, 104.)

19  **III.    LEGAL STANDARDS**

20      **A.    Rule 12(b)(6)**

21      Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) are disfavored.  *United States v.*

22  *Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  The issue on these motions is not whether the

23  claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the

24  claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

25      When evaluating a Rule 12(b)(6) motion, the district court must accept all factual allegations in

26

27      [4] These issues include general instability in the steering column, loud noises originating from the
steering wheel, and the vehicle pulling to the left when driving causing the steering wheel to hesitate

28  when turning.  (FAC ¶ 27.)

1    the complaint as true and construe the pleadings in the light most favorable to the non-moving party.

2    *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is

3    not proper where a plaintiff has alleged "enough facts to state a claim for relief that is plausible on its

4    face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("*Twombly*").  A claim "has facial

5    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6    inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663, 678

7    (2009).

8           **B.**      **Rule 9(b)**

9           Fraud claims must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b).  *See Kearns*

10    *v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d

11    1097, 1106 (9th Cir. 2003) (stating that fraud allegations be "specific enough to give defendants notice of

12    the particular misconduct . . . so that they can defend against the charge and not just deny that they have

13    done anything wrong") (citations omitted).

14           However, the purpose of Rule 9(b) is to provide notice, not to test the factual allegations of the

15    claim. *Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 414 n.2 (3d

16    Cir. 2003); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is

17    sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can

18    prepare an adequate answer from the allegations"); 5A Charles Alan Wright & Arthur R. Miller, *Federal*

19    *Practice & Procedure* § 1298 (3d ed. 2004) ("Perhaps the most basic consideration for a federal court in

20    making a judgment as to the sufficiency of a pleading for purposes of Rule 9(b) . . . is the determination

21    of how much detail is necessary to . . . enable [an adverse] party to prepare a responsive pleading").

22           As such, while the circumstances of a claim grounded in fraud must be pled with particularity, a

23    party's *knowledge* or other state of mind is not subject to the heightened pleading standard and "may be

24    averred generally." *Iqbal*, 556 U.S. at 686-87 (state of mind need not be pled under 9(b)'s "elevated

25    pleading standard," but the "less rigid . . . strictures of Rule 8").

26           Moreover, the requirement is relaxed when the defendant necessarily has full information about

27    the facts or when the facts lie more within the defendant's knowledge. *Comerica Bank v. McDonald*,

28    2006 U.S. Dist. LEXIS 86306, *8 (N.D. Cal. Nov. 20, 2006); *accord In re Rockefeller Ctr. Prop., Inc.*

1    *Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  This is because where, as here, only the defendant knows

2    what it knew and when, the plaintiff cannot be expected to have personal knowledge of those facts.  *See*

3    *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Plaintiffs may make such allegations on

4    information and belief so long as they accompany them with the facts on which their belief is founded.

5    *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*,

6    754 F. Supp. 2d 1145, 1189 (2010).  Less stringency is also applied in a fraud by omission or fraud by

7    concealment claim, which "can succeed without the same level of specificity required by a normal fraud

8    claim." *Id.* (citing *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)).  This

9    is because "[r]equiring a plaintiff to identify (or suffer dismissal) the precise time, place, and content of

10   an event that (by definition) did not occur would effectively gut state laws prohibiting fraud by

11   omission." *Id.* (citations omitted).

12   **IV.    ARGUMENT**

13            **A.    Plaintiff's FAC Adequately Pleads a Claim for Relief under the CLRA**

14            As a threshold matter, Defendant misstates the standard for when a duty to disclose arises.

15   (Motion 13:24-27.)  There are four circumstances in which a duty to disclose arises: "(1) when the

16   defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

17   knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a

18   material fact from the plaintiff; and (4) when the defendant makes partial representations but also

19   suppresses some material fact." *Falk v. GMC*, 496 F. Supp. 2d 1088, 1095 (2007) (citation omitted).

20   Here, Plaintiff alleges that Defendant had a duty to disclose the Steering Defect with the Class Vehicles

21   because it had exclusive knowledge and/or actively concealed material facts from Plaintiff.  (FAC ¶

22   102.)[5]  Plaintiff need only establish one or the other for Defendant to have had a duty to disclose.

23            Defendant also conflates the requirements for stating a claim under the CLRA making it difficult

24   to decipher its arguments.  (Motion 13:24-18:17.)  Because Defendant does contend that Plaintiff "has

25   not pleaded facts plausibly establishing any of [the following] elements:" "'1) the existence of a design

---

26

27   [5] Although the FAC also alleges that a duty to disclose arose because Defendant made a partial
     representation while suppressing a material fact (FAC ¶ 102), Plaintiff does not currently intend to
     proceed on that theory. .  Accordingly, Defendant's puffery argument is moot.  (Motion 17:22-18:17.)

28

1  defect; 2) the existence of an unreasonable safety hazard; 3) a causal connection between the alleged

2  defect and the alleged safety hazard; and 4) that Defendant knew of the defect at the time a sale was

3  made'" (Motion 14:22-27), Plaintiff addresses each element in turn below.

### 1.   Plaintiff Has Adequately Alleged Existence of a Defect

5       Throughout its Motion, Defendant curiously argues, at times with emphasis, that Plaintiff has not

6  alleged the existence of a defect.  (Motion 1:17-18; 8:10-11; 11:10-13; 13:14-17; 15:1-3; 16:18-21;

7  17:19-20; 19:18-21.)  However, Plaintiff very clearly alleges that the Class Vehicles contain a Steering

8  Defect, which manifests while driving in the form of the steering wheel locking, loss of power steering,

9  hard steering, forceful pulling to the left and right, knocking, bumping, or grinding noises, steering wheel

10  instability, and/or total steering wheel failure.  (FAC ¶¶ 2-4, 28, 31, 45.)[6]  Additionally, Plaintiff alleges

11  the various parts involved in the steering system and provides his and other complainants' experiences

12  with unsuccessful repairs.  (FAC ¶ 6, 46.)[7]  Other courts have found lesser allegations sufficient.  *See,*

13  *e.g.*, *In re Toyota Motor Corp.*, 790 F. Supp. 2d 1152, 1163 (2011) (holding plaintiff sufficiently alleged

14  existence of defect in alleging that "the vehicles 'accelerate suddenly and dangerously out of the driver's

15  control and lack[] a fail-safe mechanism to overcome this'"); *Cholakyan v. Mercedes-Benz USA, LLC*,

16  796 F. Supp. 2d 1220, 1224 n. 9 (2011) (accepting plaintiff's allegation that "'one or more design and/or

17  manufacturing defects'" cause certain vehicles "'to be highly prone to water leaks and flooding,

18  including but not limited to defects in the…water drainage system'" as sufficient to show existence of a

19  defect).

20       Defendant seemingly relies on *Eisen v. Porsche Cars N. Am., Inc.*, 2012 U.S. Dist. LEXIS

21  116836, *11-14 (C.D. Cal. Feb. 22, 2012) to argue that Plaintiff has failed to allege the existence of a

22  defect with sufficient specificity.  As an initial matter, "Plaintiff is not required to plead the mechanical

23  details of an alleged defect in order to state a claim" at the pleading stage.  *Cholakyan*, 796 F. Supp. 2d at

24  1237 n. 60; *accord Donlen v. Ford Motor Co.*, 2013 Cal. App. LEXIS 474, *19 (Cal. App. 3d Dist. June

---

[6] While Defendant contends that these symptoms may stem from different causes (Motion 1:27; 8:4-10), Plaintiff has alleged that the noises are symptoms of the Steering Defect (FAC ¶¶ 3, 28, 45-46) and, at the motion to dismiss stage, all inferences must be made in favor of Plaintiff.  *Moyo*, 40 F.3d at 984.

[7] These allegations are far from legal conclusions that Defendant pointlessly argues do not have to be accepted as true.  (Motion 11:21-22; 12:1-12.)

14, 2013) ("Plaintiff is not obligated to identify or prove the car's defect"); *Oregel v. American Isuzu Motors*, Inc., 90 Cal. App. 4th 1094, 1102 n. 8 (2001) (We do not interpret [California's consumer protection statute] as depriving a consumer of a remedy if he cannot do what the manufacturer, with its presumably greater expertise, was incapable of doing, i.e. identify the source of the leak.").  Moreover, Defendant cannot reasonably claim Plaintiff does not adequately describe the Steering Defect.  In contrast to the plaintiff in *Eisen*, Plaintiff here alleges, in considerable detail, the manner in which the Steering Defect affects the Class Vehicles and consumers' ability to steer.  (FAC ¶¶ 2-4, 6, 28, 31, 45.)  Indeed, common complaints of needing multiple steering system repairs indicate the existence of a defect.  (FAC ¶ 46.)

## 2.    Plaintiff Has Adequately Alleged Existence of a Safety Concern

Defendant devotes a substantial portion of its Motion to arguing that an omission must concern a safety defect to be actionable under the CLRA and that Plaintiff fails to allege that the Class Vehicles' Steering Defect poses a safety concern.  (Motion 2:8-18; 4:24-26; 5:2-3, 8-9, 15-17; 9:1, 14, 18, 24; 10:19-11:5 13:21-14:24; 15:4-6.)  In doing so, Defendant mischaracterizes both the legal standard and the facts.  The element at issue is reliance.  Reliance under the CLRA is presumed (or at least inferred) when a defendant's omission is material.  *See Parkinson v. Hyundai Motor Am.,* 258. F.R.D. 580, 596 (C.D. Cal. 2008) ("If materiality is shown, reliance and causation may be presumed as to the entire class.") (citation omitted); *Bristow v. Lycoming Engines*, 2007 U.S. Dist. LEXIS 31350, *21 (E.D. Cal. Apr. 10, 2007) ("Under the UCL and CLRA, the legally relevant question is framed not in terms of 'reliance,' which is required in common law fraud, but of materiality").  An omitted fact is material if, had it been disclosed, a reasonable consumer "would have been aware of it and behaved differently." *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 82746, *13-14 (C.D. Cal. Jun. 12, 2013) ("*Grodzitsky II*") (citing *Ehrlich v. BMW of N. Am.*, 801 F. Supp. 2d 908, 916 (2010)).  "[M]ateriality is generally a question of fact unless the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it."  *Stearns v. Ticketmaster Corp. et al.*, 655 F.3d 1013, 1022 (9th Cir. 2011).

Courts have found omissions of defects that pose "safety concerns" *per se* material.  *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012) (citation omitted); *Falk*, 496 F. Supp. 2d at

1094-96.  Plaintiff's burden at this stage is merely to allege the "plausible prospect of a safety problem."

*Marsikian v. Mercedes Benz USA, LLC*, 2009 U.S. Dist. LEXIS 117012, *16 (C.D. Cal. May 4, 2009).

Here, Plaintiff has surpassed that burden by pleading the following:

> This action arises out of a uniform and widespread defect in the integral steering system of an entire class of automobiles that poses an extremely unreasonable safety risk not only to the driver and passengers of the vehicle, but to other drivers on the road and pedestrians on the street.

> Upon information and belief, the Class Vehicles' steering system is defective because steering may intermittently and drastically fail while the car is in motion (the "Steering Defect"), thus creating a serious safety risk.

> An automobile's ability to respond to driver input is one of the most critical components of vehicle control, stability and safety.  The steering wheel is the driver's sole source of maneuvering and directing the vehicle based on driver input. Modern automobiles can travel at speeds in excess of 80 miles per hour on roads and highways filled with other automobiles travelling at similar speeds.  Precise and calibrated control of the nearly 5,000 pound automobile that hurtles down roads is an essential safety function.  A fully functional, responsive steering system is an integral component of a safe automobile.

> […] the Class Vehicles and their power steering system present a safety hazard and are unreasonably dangerous to consumers. The steering system is one of the most important mechanical components for vehicle control and safe driving. A defective steering system can have serious consequences on the handling, maneuvering and stability of Class Vehicles while in operation, thereby contributing to car accidents, which can cause personal injury or death.

> […] Class Vehicles have habitually suffered steering system failure while in traffic, creating very serious safety hazards. These failures often result in the steering wheel locking, loss of power steering while in motion, knocking, bumping, or grinding noises while turning, steering wheel instability, and/or total steering wheel failure.

> Hundreds, if not thousands, of purchasers and lessees of the Class Vehicles have experienced problems with the steering system. Complaints filed by consumers with the NHTSA and posted on the Internet demonstrate that the defect is widespread and dangerous, expensive to repair, and that it manifests without warning. The complaints also indicate Defendants' awareness of the problems with the steering system, the costs associated with the necessary repairs, and how potentially dangerous the defective condition is for consumers…

(FAC ¶¶ 2-4, 8, 45-46.)  The FAC goes on to provide a sampling of NHTSA complaints[8] and Edmunds

[8] The following are excerpts regarding safety concerns from the NHTSA complaints alleged in the FAC (spelling and grammar mistakes remain as found in the original):

complaints,[9] which further detail these safety concerns.   (FAC ¶ 46.)[10]   Further, Plaintiff alleges that had

    (b) POSSIBLE LOSS OF VEHICLE CONTROL WHEN THE RACK FAILS COMPLETELY AND SUDDENLY.

    (c) THE STEERING WHEEL WILL LOCK UP AND IS VERY HARD TO STEER. MY WIFE HAD THIS HAPPEN TO HER THE FIRST WHEN SHE WAS PULLING INTO OUR DRIVEWAY (THANKFULLY IT DID NOT HAPPEN IN THE CITY). [...]I STARTED THE TURN AND NOTICE INSTANTLY THAT I HAD NO STEERING. I ALMOST HIT ANOTHER CAR BECAUSE I WAS NOT ABLE TO STEER SHARP ENOUGH OR FAST ENOUGH FOR THE RIGHT HAND TURN. [...]SCARY!!!

    (e) I WAS DOING A U TURN INTO A GAS STATION WHEN THE POWER STEERING WENT OUT. I HAD TO MANUALLY TURN THE WHEEL. WITH MY TWO CHILDREN IN THE BACK I ALMOST WENT INTO A DITCH. [...]THIS IS A SERIOUS SAFETY CONCERN AND SHOULD BE LOOKED INTO FOR A RECALL.

    (g) WHILE DRIVING APPROXIMATELY 25 MPH, THE CONTACT SLIGHTLY TURNED THE STEERING WHEEL AND THERE WAS AN ABRUPT FORCEFUL RESPONSE. THE FAILURE OCCURRED WHILE DRIVING AT ANY SPEED. WHEN TURNING THE STEERING WHEEL, EXCESSIVE FORCE WAS REQUIRED TO PREVENT THE VEHICLE FROM WANDERING OFF THE ROAD OR INTO ANOTHER LANE. [...]WHILE DRIVING, THE VEHICLE WOULD DRIFT IN EITHER DIRECTION. WHEN HE TRIED TO CORRECT IT, THE VEHICLE WOULD DIVE IN THE OPPOSITE DIRECTION.

[9] The following are excerpts regarding safety concerns from the Edmunds complaints alleged in the FAC (spelling and grammar mistakes remain as found in the original) :

    (e) The steering column went out - luckily I was near home and managed to get home safely.

    (i) [After two repair attempts at two different dealerships], my Acadia still has a shimmy in the steering wheel at speeds of around 60-65 miles per hour.

    (j) Try contacting the BBB Autoline in your state to file a complaint or hire a lawyer. We have had many issues with 2010 Acadia re steering and also feel it is unsafe to drive.

    (k) I also have a 2010 Acadia and have noticed the steering wheel shaking mostly on aceleration and when I reach the speeds of 60-65.

    (l) I usually have 5 kids from 5-9 year old in the car. If the steering is failure during driving with them in the car, it could be horrible disaster. [...]I had to slowly drive my car back home.

    (m) I brought my 2010 Acadia to local dealer to fix steering wheel binding problem that causes the steering freely move about 10 degrees before actually turning the front wheels. This happens when park or driving that makes me nervous while drive the car. [After two failed repair attempts, GM recommended] driving the car for 30 days the problem will go away. [...]I am not brave enough to drive the car with my kids with steering issue[....] I had the Acadia 2010 only 2 year 4 month, but had to bring to GM dealer SEVEN times for safety related problems • FOUR times for steering problem (replaced gear twice, gear housing twice, inlet hose, set toe, and power steering bump). Now the problem is still remaining, and need the FIFTH time!!!! [...]My car still in the dealer and I am not confident to drive the car with steering defective.

    (o) I posted a message about the problems im having with my 09 Acadia on January of 2012. After nearly having a accident when the steering colum fail..

[10] Without arguing that the consumer complaints cited in the FAC should be inadmissible, Defendant references them as hearsay throughout its Motion. (Motion 2:1; 10:19; 14:15-16.)  The matter before the Court is a motion to dismiss—not a motion for summary judgment.  Parties plead facts, not evidence, at the complaint stage.  A complaint is not meant to *prove* a claim but merely to "raise a reasonable expectation that discovery *will reveal evidence*" satisfying the elements of the legal claim. *Twombly*, 550 U.S. at 556 (emphasis added); *see also Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1323 (2011) (relying on *Twombly* in unanimously affirming Ninth Circuit's reversal of the district court's order granting dismissal of a class action for securities fraud).  Additionally, it is axiomatic that all allegations in the FAC must be treated as true and construed in the light most favorable to Plaintiff at the pleading stage. *Moyo*, 40 F.3d at 984.

1   the Steering Defect been disclosed, Plaintiff and Class Members would have been aware of it and acted

2   differently.  (FAC ¶¶ 29, 55, 88, 104.)

3          If the above allegations do not "show" a plausible prospect of a safety problem, it is unclear what

4   allegations would.  Indeed, the Steering Defect is at least as severe as those arising from the defects

5   addressed in *many* cases.  *See, e.g., Falk*, 496 F. Supp. 2d at 1095-96 (malfunctioning speedometer);

6   *Keegan v. Am. Honda Motor Co*, 838 F. Supp. 2d 929, 961 (2012) (suspension defect causing tire wear);

7   *Ehrlich*, 801 F. Supp. 2d at 918 (windshields susceptible to cracking); *Ho v. Toyota Motor Corp.*, 2013

8   U.S. Dist. LEXIS 35748, *22-23 (N.D. Cal. Mar. 14, 2013) (headlights prone to condensation or

9   moisture); *Feldman v. Mercedes-Benz United States, LLC*, 2012 U.S. Dist. LEXIS 178924 (D.N.J. Dec.

10  18, 2012) (air intake system susceptible to clogging); *In re Porsche Cars N.A., Inc.*, 880 F. Supp. 2d 801,

11  828 (S.D. Ohio 2012) (plastic coolant tubes that crack, leak or otherwise fail); *Cirulli v. Hyundai Motor*

12  *Co.*, 2009 U.S. Dist. LEXIS 125139, *8-9 (C.D. Cal. Jun. 12, 2009) (sub-frames susceptible to

13  corrosion); *Belle v. Chrysler Group, LLC*, 2013 U.S. Dist. LEXIS 59221, *1, 13 (C.D. Cal. Jan. 29,

14  2013) (premature brake wear).

15         Defendant analogizes Plaintiff's allegations to those in *Daugherty v. American Honda Motor*

16  *Co., Inc.*, 144 Cal. App. 4th 824, 836 (2006) (Motion 14:2-21), but the plaintiff in *Daugherty* only

17  alleged a "risk of 'serious potential damages'—namely, the cost of repairs in the event the defect ever

18  causes an oil leak" and the only allegation regarding safety was a conclusory one in seeking punitive

19  damages.  Defendant's reliance on *Wilson* is similarly misguided.  In *Wilson*, the plaintiffs admittedly did

20  not allege that the defect at issue posed a safety concern and the issue was whether plaintiffs were

21  required to allege a safety concern in omissions cases at all.  Here, as explained above, Plaintiff has

22  adequately alleged that the Steering Defect poses a safety concern.

23         Contrary to what Defendant implies (Motion 1:27-28; 2:20; 15:4-5), Plaintiff is not required to

24  allege that the Steering Defect has actually led to car accidents or personal injury; only that it *poses* a

25  safety concern or creates a safety *risk*.  *See Ho*, 2013 U.S. Dist. LEXIS 35748, at *20-21 (rejecting

26  argument that physical injury is necessary to allege safety defect); *Ehrlich*, 801 F. Supp. 2d at 918

27

28

1  (same); *Keegan*, 838 F. Supp. 2d at 943 (same)[11].  Defendant has not cited a single case finding

2  otherwise.  Accordingly, Plaintiff has sufficiently pleaded that the Steering Defect poses a safety concern.

3  **3.  Plaintiff Has Adequately Alleged a Causal Connection Between the Defect**

4  **and the Safety Concern**

5  Defendant's argument that Plaintiff has not alleged a causal connection between the Steering

6  Defect and the safety concern is based solely on Defendant's argument that Plaintiff has not alleged the

7  existence of a defect or a safety concern in the first place.  (Motion 15:7-8; 15:21-16:5.)  As explained in

8  the preceding two sections, Plaintiff has adequately alleged both of these elements.  Moreover, Plaintiff

9  spells out the obvious causal connection between a defect and safety concern by alleging that

10  Defendant's defective vehicle steering system causes, among other things, "steering [to] intermittently

11  and drastically fail while the car is in motion," reduced "handling, maneuvering and stability of Class

12  Vehicles while in operation," "steering wheel locking, loss of power steering while in motion, knocking,

13  bumping, or grinding noises while turning, steering wheel instability, and/or total steering wheel failure,"

14  which poses the safety concern that people will get into car accidents and injure themselves and or

15  others.  (FAC ¶¶ 2-4, 8, 45-46.)  These allegations are more than sufficient.  *See Keegan*, 838 F. Supp. 2d

16  at 944 (finding causal connection where it was "plausible that defects in the rear suspension that led to

17  unexpected tire wear could give rise to the safety concerns alleged in the complaint" and citing several

18  other cases finding similar allegations sufficient).  Accordingly, Defendant's argument is baseless.

19  **4.  Plaintiff Has Adequately Alleged Defendant's Knowledge of the Defect at**

20  **the Time of Sale**

21  Defendant argues that the FAC fails to allege that Defendant knew about the Steering Defect

22  prior to the time of sale to Plaintiff on or about May 7, 2010.  (Motion 15:9-10; 16:6-17:21.)  It is

23  important to note that, by its very terms, Rule 9(b) does not apply to Plaintiff's allegations regarding

---

[11] *See also Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (2011) (finding safety risk where vehicle's water-leak defect could *conceivably* cause sudden and unexpected engine failure and result in personal injury or death); *Marsikian*, 2009 U.S. Dist. LEXIS 117012 at *16 (denying motion to dismiss a CLRA claim where plaintiff alleged that air intake systems were "susceptible to clogging" and the defect could lead to "substantial electrical failure" because "it is not implausible that the [clogging] would cause 'catastrophic engine and electrical system failure' while the car is on the road").

1  Defendant's knowledge.  Fed. R. Civ. P. 9(b) ("knowledge, and other conditions of a person's mind may

2  be alleged generally").  This is particularly so where, as here, the matter is "peculiarly within the

3  opposing party's knowledge… prior to discovery."  *Mlejnecky v. Olympus Imaging Am., Inc.*, 2011 U.S.

4  Dist. LEXIS 42333, *17 (E.D. Cal. Apr. 18, 2011).  Thus, Plaintiff need only raise a plausible inference

5  that Defendant knew, or by the exercise of reasonable care should have known, of the Steering Defect at

6  the time of sale.  *Kowalsky v. Hewlett-Packard Co.*, 2011 U.S. Dist. LEXIS 89379, *11, 13-14 (N.D.

7  Cal. Aug. 10, 2011) ("*Kowalsky II*"); *Grodzitsky II*, 2013 U.S. Dist. LEXIS 82746, at *20.  Plaintiff has

8  surpassed this burden.

9  Foremost, the FAC alleges that Defendant had *actual knowledge* of the Steering Defect at least

10  since February 2009—over a year before Plaintiff purchased his vehicle—as evidenced by Defendant

11  having issued at least six TSBs addressing the steering system issue.  (FAC ¶¶ 48-49, 53-54.)  Although

12  Defendant argues that these TSBs focused on the correction of noise issues, they still support a plausible

13  inference that Defendant knew of the Steering Defect prior to Plaintiff's purchase because, as evidenced

14  by Plaintiff and other complainants' documented experiences, the noises referenced in the TSBs are

15  merely some of many symptoms of the Steering Defect.  (FAC ¶ 3, 28, 45-46.)  These symptoms are not

16  just often simultaneously occurring, they are commonly interrelated (e.g. a rattle noise can simply be the

17  sound a vibration makes and noises heard while turning may be indicative of loss of power steering or

18  steering wheel instability).

19  Additionally, the FAC alleges upon information and belief[12] that Defendant knew or, with the

20  exercise of reasonable care, should have known of the Steering Defect prior to 2008, and before the sale

21  of the car to Plaintiff, through at least six identifiable sources: (1) pre-release testing data; (2) consumer

22  complaints made directly to Defendant and its dealers[13]; (3) consumer complaints made to NHTSA[14];

---

23  [12] Before discovery, defendants necessarily have superior (if not exclusive) knowledge about

24  these sources of their own knowledge.  Accordingly, Plaintiff's allegations about these sources may be
made on information and belief, accompanied, as they are, by allegations of the facts upon which
Plaintiff's belief is founded.  *See In re Toyota*, 754 F. Supp. 2d at 1189.

25  [13] Although Defendant necessarily has superior knowledge of the full universe of consumer

26  complaints made to it, several of the NHTSA and Edmunds complaints quoted in the FAC indicate that
consumers had called or otherwise contacted Defendant's customer service about the Steering Defect

27  and many indicate that consumers had contacted or taken their vehicle to Defendant's authorized dealers.
(FAC ¶ 46.)

28  [14] Plaintiff quotes a sampling of NHTSA complaints that indicate consumers were complaining

1    (4) consumer complaints posted on various internet forums and monitored by Defendant's customer care

2    agents[15]; (5) testing conducted in response to reported complaints; (6) aggregate data from GM dealers,

3    such as dealer repair orders, high warranty reimbursement rates that can cost hundreds and sometimes

4    thousands of dollars for each vehicle; as well as other internal sources unknown and/or unavailable to

5    Plaintiff prior to discovery.  (FAC ¶¶ 46, 48, 51.)

6           Defendant bases its argument that Plaintiff has not alleged knowledge in part on its argument

7    that Plaintiff has not identified a defect at all.  (Motion 15:9-10; 17:19-21).  As explained in Section

8    IV(A)(1) above, Plaintiff has sufficiently alleged the existence of a defect.  Additionally, Defendant

9    attempts to discredit Plaintiff's allegations regarding Defendant's knowledge through aggregate data and

10   customer complaints by relying on a single passage in *Wilson*, 668 F.3d 1136.  (Motion 16:21-17:21.)

11   Such reliance is misplaced.  In *Wilson*, the court found that the plaintiffs' allegations of HP's "access to

12   the aggregate information and data regarding the risk of overheating" and "customer complaints" were

13   too speculative to infer that HP had knowledge of the defect at the time of manufacture.  *See Wilson*, 668

14   F. 3d at 1147.  However, *Wilson* further recognized the contrast between its plaintiffs' allegations of

15   "access to aggregate information," and those in *Falk*, where the court found that the plaintiffs sufficiently

16   alleged that General Motors, as the company which produced the trucks, had superior knowledge and

17   should have known the speedometers were defective due to access to aggregate data from its dealers,

18   pre-release testing data, and complaints from its customers.  *Id.* (citing *Falk*, 496 F. Supp. 2d at 1096).

19   Here, Plaintiff's allegations more closely resemble those in *Falk* than those in *Wilson*.  Furthermore,

20   while the consumer complaints cited by Plaintiff may not, on their own, be sufficient to establish

21   ───────────────────────────────
     to NHTSA about the Steering Defect. (FAC ¶ 46.) Other courts have found similar allegations to be

22   sufficient. *See, e.g.*, *Cirulli*, 2009 U.S. Dist. LEXIS 125139, at *9 (holding that the plaintiff had
     sufficiently alleged knowledge where the plaintiff alleged that the defendant had tracked the NHTSA

23   database "to track reports of defective Sonata sub-frames"). The FAC's passive reference to a NHTSA
     ODI investigation (FAC ¶ 138), which Defendant calls attention to (Motion 8:15-19, fn. 3), is simply a

24   pleading mistake that will be rectified should Plaintiff be required to amend the FAC.  Notably, the at-
     issue phrase appears in Plaintiff's UCC express warranty cause of action and is not relied upon for

25   establishing Defendant's knowledge under the CLRA.  (FAC ¶ 138.)
           [15] For illustrative purposes, and in no attempt to comprehensively cover all relevant consumer

26   complaints posted on various websites, Plaintiff provides several examples of complaints posted on
     Edmunds and http://www.acadiaforum.net.  (FAC ¶¶ 46, 51.)  Courts have found such online complaints

27   in third-party forums to be useful evidence taken together with other allegations of knowledge. *See, e.g.*,
     *Kowalsky II*, 2011 U.S. Dist. LEXIS 89379, at *12-13 (finding support for inference of HP's knowledge

28   in the fact that consumers complained of the defect in third party forums and directly to HP).

1    Defendant's knowledge, they are still valid factual allegations that bolster Plaintiff's contention that

2    Defendant knew.  Defendant's attempt to discredit consumer complaints because they are "not

3    representative [of the Class] in any relevant statistical sense" (Motion 14:16-18; 17:13-15) is unavailing

4    as numerous courts have relied on such complaints.  *See, e.g.*, *Falk*, 496 F. Supp. 2d at 1096; *Grodzitsky*

5    *II*, 2013 U.S. Dist. LEXIS 82746, at *20-21; *Kowalsky II*, 2011 U.S. Dist. LEXIS 89379, at *15;

6    *Ehrlich*, 801 F. Supp. 2d at 918; *In re Toyota*, 754 F. Supp. 2d at 1192; *Dickerson v. Electrolux Home*

7    *Prods., Inc.*, 2011 U.S. Dist. LEXIS 26994, *2-3 (C.D. Cal. 2011); *In re Sony VAIO Computer Notebook*

8    *Trackpad Litig.*, 2010 U.S. Dist. LEXIS 115142, *14 (S.D. Cal. 2010); *Avedisian v. Mercedes-Benz*

9    *USA, LLC*, 2013 U.S. Dist. LEXIS 73444, *19-20 (C.D. Cal. May 22, 2013).  Indeed, at least one court

10   has noted that "without the benefit of formal discovery, it is difficult to imagine what other publically

11   available facts a plaintiff may rely on" besides consumer complaints.  *See Kowalsky v. Hewlett Packard*

12   *Co.*, 771 F. Supp. 2d 1138, 1145 (2010) ("*Kowalsky I*").

13          Defendant further attempts to discredit many of the consumer complaints by drawing a

14   meaningless distinction between General Motors Corporation ("Old GM") and itself ("New GM") to

15   argue that it "has no relevant legal responsibility" for vehicles manufactured and sold by Old GM.

16   (Motion 1:23-26; 6:9-7:5.)  However, Plaintiff does not seek to hold Defendant liable for vehicles it did

17   not manufacture.  (FAC ¶ 1 fn. 1; ¶ 69(a).)  In fact, as Defendant notes (Motion 7:3-5), Plaintiff makes it

18   a point to allege that "[t]he proposed Class Vehicles include only vehicles manufactured and sold after

19   July 10, 2009, the date of the closing of the bankruptcy styled *In re General Motors Corp. et al*,

20   administered in the United States Bankruptcy Court for the Southern District of New York.  *See In re*

21   *General Motors Corp*, Case No. 09-50026 (Bankr. S.D.N.Y. July 5, 2009)."  (FAC ¶ 1 fn. 1; ¶ 69(a).)

22   Nevertheless, given that Plaintiff is informed and believes that Defendant is merely the continuation of

23   Old GM (FAC ¶ 34-35)[16] and that the Class Vehicles are substantially similar, if not identical, to Old

---

[16] Plaintiff alleges:

Defendant General Motors Company was formed by the United States Department of the Treasury in 2009 and on July 10, 2009, acquired and assumed substantially all of the assets and liabilities of General Motor Corporation.

Upon information and belief, General Motors Company is the continuation of General Motors Corporation after the latter filed

1  GM's previous model years (FAC ¶ 53.), consumer complaints regarding previous model years still

2  support the fact that Defendant knew of and concealed the existence of the Class Vehicles' Steering

3  Defect.

4        At the pleading stage, these allegations regarding consumer complaints made directly to

5  Defendant and its dealers, posted on other websites, and collected by NHTSA, taken together with

6  Plaintiff's other allegations of Defendant's knowledge, are sufficient to establish a plausible inference

7  that Defendant knew or should have known of the Steering Defect prior to Plaintiff's purchase.[17]  In fact,

8  the allegations of knowledge here are at least as fulsome as those found sufficient by other courts

9  considering the issue at the pleading stage.  *See, e.g.*, *Ho*, 2013 U.S. Dist. LEXIS 35748, at *23-24;

10  *Banks v. Nissan N. Am., Inc.*, 2012 U.S. Dist. LEXIS 37754, *2 (N.D. Cal. Mar. 20, 2012); *Cirulli*, 2009

11  U.S. Dist. LEXIS 125139, at *9-10; *Kowalsky II*, 2011 U.S. Dist. LEXIS 89379, at *9-10; *Falk*, 496 F.

12  Supp. 2d at 1096; *Mlejnecky*, 2011 U.S. Dist. LEXIS 42333, at *18; *Ehrlich*, 801 F. Supp. 2d at 918-19.

13  Accordingly, at the pleading stage, where all doubts are to be resolved in favor of sustaining the

14  complaint, Plaintiff's allegations are more than sufficient to establish a plausible inference of

15  Defendant's knowledge of the Steering Defect when the Class Vehicles were sold.

16        **B.      Plaintiff's FAC Adequately Pleads a Claim for Relief under the UCL**

17        Notably, Defendant does not address Plaintiff's UCL cause of action separately from Plaintiff's

18  CLRA cause of action but rather argues that both claims "fail as a matter of law because the complaint

19  does not allege facts 'showing' a systemic safety defect that would create a duty to disclose under

20  California law." (Motion 2:8-12.)  Furthermore, although each of the three prongs of the UCL offers an

21  independent basis for relief and Plaintiff alleges all three bases in the FAC (FAC ¶¶ 106-112), Defendant

22

23        bankruptcy in 2009, as evidenced by the fact that Board Members for
          General Motor Company, Errol B. Davis, Jr., E. Neville Isdell, Kent
24        Kersa, Phillip A. Laskawy, and Kathryn V. Marinell, continued as Board
          Members for General Motors Corporation.
25  (FAC ¶ 34-35.)  The allegations regarding General Motors Company are applicable to
    Defendant General Motors LLC because both names refer to the same entity.  (*See*
26  Declaration of Anne T. Larin in Support of Stipulation for Dismissal of Defendant
    General Motors Company Without Prejudice, ¶¶ 6-7.)
27        [17] Defendant's hearsay argument (Motion 2:1; 10:19; 14:15-16.) is particularly unmeritorious
    here since the consumer complaints are not even being referenced for the truth of the matter asserted, but
28  to show Defendant's state of mind that it knew of the Steering Defect.

1   does not address any of the prongs in its Motion.  (*See generally* Motion.)  Instead, Defendant incorrectly

2   argues that Plaintiff's UCL claim "obviously" sounds in fraud (Motion 12:14-15).  To the extent

3   Plaintiff's UCL claim (particularly the unfair and unlawful prongs) are premised on Plaintiff's breach of

4   warranty claims, Rule 9(b)'s  heightened pleading standard does not apply.  *See Vess*, 317 F.3d at 1104

5   (holding that where a plaintiff "allege[s] some fraudulent and some non-fraudulent conduct…only the

6   allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements").

### 1.    Unlawful Prong

8   The unlawful prong of section 17200 prohibits any business practices that are otherwise

9   forbidden by law.  *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) ("To be

10   'unlawful' under the UCL, the [alleged business practice] must violate another 'borrowed' law"); *see*

11   *also Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) ("[S]ection

12   17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition

13   law makes independently actionable.") (internal quotation marks omitted).  "Virtually any state, federal

14   or local law can serve as the predicate for an action under section 17200." *Davis*, 691 F.3d at 1168

15   (internal citations, quotation marks, and alteration omitted).

16   Plaintiff alleges that Defendant committed an unlawful business practice by violating various

17   provisions of the CLRA, Song-Beverly Act, UCC, and Magnuson-Moss Warranty Act.  (FAC ¶ 108.)

18   Defendant's minimal references to Plaintiff's UCL claim are limited to its arguments with respect to

19   Plaintiff's CLRA claim.  (Motion 2:8-18; 13:23-24; 15:11-13; 16:6-8.)  However, as discussed

20   throughout this Opposition, Plaintiff has sufficiently alleged plausible claims that Defendant violated the

21   CLRA as well as each of the other aforementioned laws and, regardless, only one need survive for

22   Plaintiff's "unlawful" UCL claim to survive.  Therefore, Plaintiff has sufficiently alleged a UCL claim

23   on a theory that Defendant engaged in an "unlawful" practice.  Since Defendant need only have violated

24   one of the prongs to be found strictly liable under the UCL, Plaintiff's UCL claim survives.

### 2.    Unfair Prong

26   It is well-settled that "it is not necessary for a business practice to be 'unlawful' in order to be

27   subject to a [UCL] action" and that the "unfair prong" of the UCL "is intentionally broad." *State Farm*

28   *Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093, 1103 (1996).  While California courts are

1  split on which of several "unfairness" standards applies, a manufacturer's failure to disclose a fact that it

2  has a duty to disclose is certainly constitutes an "unfair" business practice under any standard.  *See, e.g.*,

3  *Ho*, 2013 U.S. Dist. LEXIS 35748, at *29-30, *30 n. 5.  As explained above, Plaintiff adequately alleges

4  that Defendant had a duty to disclose the Steering Defect.  Additionally, Plaintiff alleges that Defendant's

5  other practices, including its practice of breaching its express and implied warranties constitutes an unfair

6  business practice under the UCL.

7      **3.**  **Fraudulent Prong**

8    Defendant seemingly intends to apply its arguments regarding Plaintiff's CLRA claim to

9  Plaintiff's "fraudulent business practices" UCL claim.  Accordingly, Plaintiff incorporates his above

10  responses from Section VI(A).  Moreover, knowledge is not a required element for stating a UCL fraud

11  claim.  *See Comm. on Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983)

12  (superseded by statute on other grounds); *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009).

13  Accordingly, arguments regarding Plaintiff's inability to plead Defendant's knowledge are unavailing to

14  the extent Defendant makes them with respect to Plaintiff's UCL claim.

15   **C.**  **Plaintiff's FAC Adequately Pleads a Claim for Breach of Implied Warranty**

16      **Pursuant to the Song-Beverly Act**

17      **1.**  **Plaintiff Does Not Seek to Extend the Duration of the Implied Warranty**

18    Defendant takes issue with Plaintiff's claim for breach of implied warranty pursuant to the Song-

19  Beverly Act on the supposed grounds that it violates Cal. Civ. Code § 1791.1(c), which states that the

20  duration of an implied warranty is the same as the duration of any express warranty up to a maximum of

21  one year from the date of purchase (the "duration provision").  (Motion 18:26-19:25.)[18]  As a threshold

22  matter, the plain allegations in the FAC provide that Defendant breached the implied warranty of

23  merchantability within the one-year time period by alleging that the "Class Vehicles and their steering

24  system suffered from an inherent defect at the time of sale and thereafter."  (FAC ¶ 117, 119.)

25  Additionally, Plaintiff alleges that the Steering Defect in his vehicle actually manifested well within the

26

27     [18] Here, Defendant extended an express warranty for at least three years or until the car reached
36,000 miles.  (FAC ¶¶ 12, 127(a), 137(a).)  Since three years exceeds the maximum implied warranty
duration of one year and since Plaintiff alleges that he had still not reached 36,000 miles over a year after

28  he purchased his vehicle (FAC ¶ 27), the maximum one-year duration applies.

1   one year period.  (FAC ¶¶ 24-26.)  It is also established that an implied warranty claim under the Song-

2   Beverly Act carries a four year statute of limitations, well within which Plaintiff brought his action.

3   *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 215 n. 5 (1991).  Accordingly, it is not

4   clear what Defendant takes issue with.

5          To the extent Defendant intends to argue that Plaintiff was required to discover and report the

6   Steering Defect to Defendant within the one year period, this point is also moot because Plaintiff alleges

7   that he did just that—three times.  (FAC ¶¶ 24-26.)  Even so, Plaintiff was not required to do so.  The

8   California Court of Appeal in *Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1304 (2009)

9   explicitly rejected the argument that the duration provision of the Song-Beverly Act should be

10  interpreted to bar an action for breach of the implied warranty of merchantability when the purchaser

11  fails to discover and report the defect to the seller within one year "because the plain language of the

12  statute, particularly in light of the consumer protection policies supporting the Song-Beverly Act,[19] make

13  clear that the statute merely creates a limited, prospective duration for the implied warranty of

14  merchantability; it does not create a deadline for discovering latent defects or for giving notice to the

15  seller."  *Mexia*, 174 Cal. App. 4th at 1301.  Accordingly, the appellate court reversed the trial court and

16  held that the "implied warranty of merchantability may be breached by a latent defect undiscoverable at

17  the time of sale."  That is, if a product is sold with a latent defect, the product is rendered unmerchantable

18  "by the existence of the unseen defect, not by its subsequent discovery."  *Id.* at 1305.

19         This Court "must defer to the California Court of Appeal's interpretation [of a state statute]

20  unless there is convincing evidence that the California Supreme Court would decide the matter

21  differently."  *California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1099 (9th Cir. 2003).

22  Defendant cites one district court case as its "convincing" evidence that the California Supreme Court

23  would not follow *Mexia*.  *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013 (S.D. Cal. 2011).

24  Despite the *Marchante* court's criticism of *Mexia*, the court's holding was ultimately based on simply

25

26         [19] For example, "[t]he Song-Beverly Act was intended to supplement the provisions of the
    California Uniform Commercial Code, rather than to supersede the rights and obligations created by that

27  statutory scheme."  *Krieger*, 234 Cal. App. 3d at 215 (citing Cal. Civ. Code § 1790.3).  "[U]ndisclosed
    latent defects…are the very evil that the implied warranty of merchantability was designed to remedy."

28  *Mexia*, 174 Cal. App. 4th at 1305 (citation omitted).

distinguishing the facts of the two cases. *Marchante*, 801 F. Supp. 2d at 1021-22 (dismissing plaintiffs' Song-Beverly Act claim because they did "not allege that the televisions failed to work properly from the outset.  They instead allege[d] issues arising after several years of use").  Unlike the plaintiffs in *Marchante* (and like the plaintiff in *Mexia*), Plaintiff here alleges that the steering system in the Class Vehicles failed to work properly from the outset.  (FAC ¶¶ 24-26, 117, 119.)[20]

Because Plaintiff alleges that the Steering Defect existed in the Class Vehicles from the outset, Defendant's alternative argument that even despite *Mexia* there is "no plausible factual basis for claiming [the Defect] existed during the one-year implied warranty period" is baseless.  (Motion 19:16-25.) Defendant again relies on its argument that Plaintiff has not alleged a safety defect at all, which Plaintiff has refuted above, and cites *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852-53 (2012), which, like *Marchante*, did not—and could not—overrule *Mexia* but merely distinguished it by finding that the plaintiff's Song-Beverly Act claim was barred because he did not allege that the defect existed from the outset but that the issues arose "only after seventeen months of use, well outside the one-year period established by the Song–Beverly Act."  As explained above, Plaintiff has alleged that the Steering Defect existed from the outset.  (FAC ¶¶ 24-26, 117, 119.)  Accordingly, Defendant's argument fails.

## 2. Defendant's Limited Warranty Cannot Serve to Limit Plaintiff's Remedies under the Song-Beverly Act

Despite acknowledging that Plaintiff brings his implied warranty claim under the Song-Beverly Act (Motion 18:20-21), Defendant argues that "the GM New Vehicle Limited Warranty" properly "limits plaintiff's remedies for breach of implied warranty to repair of components found defective in materials or workmanship" because "limitation of remedy is expressly permitted by Cal. Com. Code § 2719(1)(a)."  (Motion 20:1.)  To further confuse things, Defendant also relies on a case regarding breach of express warranty under the UCC.  *Rice v. Sunbeam Prods.*, 2013 U.S. Dist. LEXIS 7467, *34-36 (C.D. Cal. Jan. 7, 2013).[21]  The UCC is flatly inapplicable here.[22]  Also, this claim concerns the breach

---

[20] To be clear, Plaintiff does not claim that the implied warranty of merchantability in this case lasted for longer than a year.

[21] In fact, the defendant in *Rice* did not even move to dismiss the plaintiff's claim for breach of an implied warranty of merchantability.  *Rice*, 2013 U.S. Dist. LEXIS 7467, at *9.

[22] As noted above, the Song-Beverly Act was intended to afford consumers *more* protection by *supplementing* the protections afforded under the UCC.  Cal. Civ. Code § 1790.3.

1   of an implied warranty of merchantability not the breach of an express warranty.

2        The Song-Beverly Act expressly prohibits providers of express warranties to limit the remedies

3   for breach of the implied warranty of merchantability: "A manufacturer, distributor, or retailer, in

4   transacting a sale in which express warranties are given, may not limit, modify, or disclaim the implied

5   warranties guaranteed by this chapter to the sale of consumer goods." Cal. Civ. Code § 1793; *Kwan v.*

6   *Mercedes-Benz of North America, Inc.*, 23 Cal. App. 4th 174, 184 (1994).  Because Defendant is a

7   manufacturer that transacted a sale in which an express warranty was given, Plaintiff is not limited to the

8   remedy of repair but is entitled to all of the remedies made available under Cal. Civ. Code § 1794.

9       **D.**    **Plaintiff's FAC Adequately Pleads a Claim for Breach of Express Warranty**

10             **Pursuant to the UCC**

11       To establish a claim for breach of express warranty under the UCC, a plaintiff need only show

12  that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods;

13  (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v.*

14  *Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213 (2010) (internal quotation marks and citation omitted).

15  Defendant does not—and cannot—contest that its Limited Warranty is an affirmation of fact or a

16  promise, or that it was part of the basis of the bargain.  Accordingly, the only issue is whether Plaintiff

17  sufficiently pleaded that Defendant breached its express warranty.  Here, Plaintiff sufficiently alleges that

18  Defendant breached its Limited Warranty, which states that "[t]he warranty covers repairs *to correct* any

19  vehicle defect,"[23] by replacing defective parts with other defective parts or otherwise failing to correct

20  the Steering Defect:

21          Plaintiff is informed and believes, and based thereon alleges, that the
        repairs are a temporary mask that will last only long enough to ensure

22          that the Steering Defect manifests outside of the Class Vehicles' express
        warranty period. Ultimately, this leaves consumers with defective

23          vehicles that are substantially certain to again experience the Steering
        Defect and costly repairs, as well as the associated safety hazards.

24

25          Plaintiff is also informed and believes, and based thereon alleges, that
        Defendants are aware that attempting to repair the Steering Defect by

26          replacing the defective steering components with the same defective
        components does not fix the Steering Defect.   Rather, Defendants

27      [23] *See* Declaration of Gregory R. Oxford in Support of Motion to Dismiss Plaintiff's First

28  Amended Complaint ["Oxford Decl."] ¶ 2, Ex. A [at p. 4] (emphasis added).

1    implemented this temporary fix to ensure that the Steering Defect
     occurs outside of the warranty period so that Defendants can unfairly
2    shift financial responsibility for the Steering Defect to Class Members.

3    (FAC ¶¶ 14-15.)  Such allegations are sufficient at the pleading stage.  *See, e.g.*, *In re Toyota*, 754 F.

4    Supp. 2d at 1177-78.

5           Defendant argues that Plaintiff has not pleaded an actionable express warranty claim because he

6    does not allege that he requested repairs for his "current" steering problems from an authorized GM

7    dealer within the warranty period[24] or that Defendant refused to provide Plaintiff warranty repairs free of

8    charge.  (Motion 20:22-21:2.)[25]  However, nothing requires Plaintiff to have sought repairs for his

9    "current" car issues, which manifested outside of the warranty period.  In fact, doing so would be futile

10   for that very reason.  Defendant essentially seeks to use its failure to correct its own defect as promised

11   by its own warranty to limit its own liability.  Therefore, it would be illogical and against consumer

12   protection policies to hold that a breach of an express warranty claim is undermined by the fact that the

13   breach caused the defect to manifest again outside of the warranty period.  Defendant's Limited

14   Warranty requires that the consumer "take the vehicle to a Chevrolet dealer facility within the warranty

15   period and request the needed repairs."  (Oxford Decl. ¶ 2, Ex. A [at p. 4].)  Plaintiff alleges that he did

16   just that.  (FAC ¶¶ 24-28.)  In fact, Plaintiff went above and beyond what was required by Defendant's

17   Limited Warranty by taking his car to *two* different Chevrolet dealerships on *four* separate occasions all

18   within the warranty period, none of which fixed the problem.  (FAC ¶¶ 24-28.)

19          Although Plaintiff does not allege that Defendant refused or charged to repair Plaintiff's vehicle,

20   it cannot be that Defendant did not breach its express warranty just because Defendant "repaired" the

21   vehicle by replacing defective parts with other defective parts thereby ensuring that the Steering Defect

22

23   [24] Defendant's argument based on *Daugherty*, 144 Cal. App. 4th at 830-31 (Motion 21:15-22:5)
     is not on point as Plaintiff does not allege that Defendant breached its express warranty based on a latent
24   defect that Plaintiff discovered after expiration of the warranty period.
     [25] In making this argument, Defendant seems to mistakenly believe that Plaintiff brought his
25   breach of express warranty claim under the Song-Beverly Act  rather than pursuant to the UCC.  (Motion
     20:27-21:7.)  Specifically, Defendant argues that Plaintiff "has not alleged the essential element of
26   'presentation' to an authorized dealer for repair" (Motion 20:27-28) and cites *In re Sony Grand WEGA
     KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1097 (2010) to argue
27   that *the Song-Beverly Act* requires consumers to deliver the defective product for repair within the
     express warranty period.  (21:2-7.)  Regardless, Plaintiff alleges that he presented his vehicle for repair
28   on four separate occasions within the express warranty period.  (FAC ¶¶ 24-27.)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

would eventually manifest outside of the express warranty period.  (FAC ¶¶ 14-15.)  Doing so also constitutes a breach of the express warranty.  *See In re Toyota*, 754 F. Supp. 2d at 1177-78 (holding allegations that purported repairs in warranty were themselves defective sufficient to fall within the scope of the "repair or adjustment" limited warranty); *Horvath v. LG Elecs. MobileComm U.S.A., Inc.*, 2012 U.S. Dist. LEXIS 19215, *17-19 (S.D. Cal. Feb. 13, 2012) (concluding that plaintiffs alleged facts to raise a right to relief for breach of express warranty above the speculative level where they alleged that they received replacement phones that also proved to be afflicted with the same defects); *Donlen*, 2013 Cal. App. LEXIS 474, at *18 (holding that evidence of a post-warranty repair was relevant to show that the manufacturer's in-warranty repairs did not bring the consumer's truck into conformity with the warranty before the warranty expired).

Alternatively, to find Defendant's act of conducting unsuccessful repairs sufficient to comply with its express warranty would actually demonstrate that Defendant's limited remedy fails of its essential purpose.  Under the UCC, when a limited remedy fails of its essential purpose, a consumer may pursue all of the remedies available for breach of contract.  *Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 48367, *16 (N.D. Cal. Jun. 5, 2009).  "A limited remedy fails of its essential purpose when the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all."  *Id.* at *16-17.  In *Stearns*, the court found that the express warranty, which stated that repair or replacement was the exclusive remedy for defects with the defendant's beds, did not fail of its essential purpose because full refunds were provided and accepted when repairs proved unsatisfactory.  *Id.* at *17-20.  In so finding, however, the court noted that the case before it presented an "unusual circumstance" and that the theory is raised more often where, as here, "a buyer seeks a refund or rescission of the original agreement, but the seller insists that repair is the only available remedy."  *Id.* at *17.  Furthermore, the court noted that the Song-Beverly Act describes the appropriate remedy for breach of an express warranty even under the UCC, namely replacement or full refund after a reasonable number of repair attempts.  *Stearns*, 2009 U.S. Dist. LEXIS 48367, at *17-18.[26]  "The reasonableness of the number of repair attempts is a question of fact to be

_____

[26] The Song-Beverly Act provides that "if the manufacturer or its representative in this state does not service or repair the goods to conform to the applicable express warranties after a reasonable number

1  determined in light of the circumstances, but at a minimum there must be more than one opportunity to

2  fix the nonconformity." *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App. 4th

3  785, 799 (2006).[27] Here, Plaintiff has given Defendant much more than a reasonable opportunity to

4  repair—he has given Defendant four opportunities to repair to no avail.  (FAC ¶¶ 24-27.)  Accordingly,

5  Plaintiff has sufficiently alleged that Defendant breached its express warranty.

6        **E.**      **Plaintiff's FAC Adequately Pleads a Claim for Breach of Warranty Pursuant to**

7                **the Magnuson-Moss Warranty Act**

8          Defendant's lone argument against Plaintiff's Magnuson-Moss Warranty Act claim is that it

9  cannot survive without the survival of Plaintiff's underlying state-law warranty claims.  (Motion 22:7-

10  13.)  However, as is clearly evidenced above, Plaintiff has sufficiently pleaded causes of action for

11  breach of implied warranty pursuant to the Song-Beverly Act and breach of express warranty pursuant to

12  the UCC.  Accordingly, Plaintiff's Magnuson-Moss Warranty Act claim is also sufficiently pled.

13        **F.**      **In the Alternative, if the Court is Inclined to Grant Any Part of Defendant's**

14                **Motion, Plaintiff Should Be Granted Leave to Amend**

15          It is axiomatic that, should the Court determine that Plaintiff's FAC is insufficient in any manner,

16  leave to amend should be freely given. Fed. R. Civ. P. 15(a)(2).  Indeed, the Supreme Court has stated

17  that the Federal Rules require free amendment of Plaintiff's Complaint:

18          In the absence of any apparent or declared reason—such as undue
        delay, bad faith or dilatory motive on the part of the movant, repeated

19          failure to cure deficiencies by amendments previously allowed, undue
        prejudice to the opposing party by virtue of allowance of the

20          amendment, futility of amendment, etc.—the leave sought should, as the
        rules require, be "freely given."  Of course, the grant or denial of an

21          opportunity to amend is within the discretion of the District Court, but

---

22
23  of attempts, the manufacturer shall either replace the goods or reimburse the buyer in an amount equal to
the purchase price paid by the buyer, less that amount directly attributable to use by the buyer prior to the
discovery of the nonconformity." Cal. Civ. Code § 1793.2(d)(1).

24     [27] *See also Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So. 2d 319
(1972) ("The buyer of an automobile is not bound to permit the seller to tinker with the article

25  indefinitely in the hope it may ultimately be made to comply with the warranty.  [Citations.]  At some
point in time, if major problems continue to plague the automobile, it must become obvious to all people

26  that a particular vehicle simply cannot be repaired or parts replaced so that the same is made free of
defect."); *Rester v. Morrow* 491 So. 2d 204, 210 (1987) ("There comes a time when enough is enough—

27  when an automobile purchaser, after having to take his car into the shop for repairs an inordinate number
of times and experiencing all of the attendant inconvenience, is entitled to say, 'That's all,' and revoke,

28  notwithstanding the seller's repeated good faith efforts to fix the car").

1

> outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

2

3  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

4  There are various factual allegations Plaintiff may add to cure any possible deficiencies found by

5  the Court.  Accordingly, if the Court deems Plaintiff's FAC deficient in any manner, Plaintiff

6  respectfully requests that the Court grant Plaintiff leave to amend.

7  **V.      CONCLUSION**

8  For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant's

9  Motion in its entirety.  Alternatively, should the Court be inclined to grant any part of Defendant's

10 Motion, Plaintiff respectfully requests leave to amend.

11

12 Dated: July 9, 2013                         Respectfully submitted,

13                                              Capstone Law APC

14

15                                              By:  /s/ Sharon Yaacobi

16                                                   Jordan L. Lurie
                                                     David L. Cheng
                                                     Tarek H. Zohdy
17                                                   Cody R. Padgett
                                                     Sharon Yaacobi

18                                                   Attorneys for Plaintiff Chris Aguilar

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT