**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRIS AGUILAR, on behalf of himself and others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>GENERAL MOTORS LLC,<br><br>    Defendant. | 1:13-CV-00437-LJO-GSA<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br>(Doc. 34) |

**PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

  Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Boxer to address this Court's inability to accommodate the parties and this action. The parties are required to consider consent to a Magistrate Judge to conduct all further proceedings in that the Magistrate Judges' availability is far more realistic and accommodating to parties than that of U.S. District Judge Lawrence J. O'Neill who must prioritize criminal and older civil cases.

**INTRODUCTION**

  Plaintiff Chris Aguilar ("Aguilar") brought this purported class action for violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, the Song-Beverly

Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1791.1 and 1792, *et seq.*, the Magnuson-Moss Warranty Act ("Magnuson-Moss Act"), 15 U.S.C. § 2303, *et seq.*, and Cal. Comm. Code § 2313 against defendant General Motors LLC ("GM") in this Court. Aguilar invokes this Court's jurisdiction on the basis of federal question under the Class Action Fairness Act of 2005 ("CAFA"). This Court granted in part with leave to amend GM's motion to dismiss Aguilar's first amended complaint pursuant to Fed. R. Civ. P. 8(a)(2), 9(b), and 12(b)(6) for failure to state a claim. For the reasons discussed below, this Court GRANTS IN PART GM's motion to dismiss Aguilar's second amended complaint.

## BACKGROUND

**A. Background**

In 2009, General Motors Corporation ("Old GM") entered bankruptcy. Prior to bankruptcy, Old GM manufactured, distributed, and serviced previous model years of the GMC Acadia, Chevrolet Traverse, and Buick Enclave that are substantially similar, if not identical, to the model years at issue. Old GM sold its business assets to GM.

GM manufactures, distributes, and services the 2009 through 2012 GMC Acadia, Chevrolet Traverse, and Buick Enclave ("class vehicles"). The class vehicles share the Lambda crossover platform, including the same steering system. Aguilar claims that steering system in these vehicles is defective. Specifically, he claims that the steering defect causes steering system failure that results in steering wheel locking, loss of power steering while in motion, steering wheel instability, knocking, bumping or grinding noises while turning, and/or total steering wheel failure. The Acadia and Traverse are sold with a three-year/36,000 mile bumper-to-bumper express written warranty, and the Enclave carries a five-year/50,000 mile bumper-to-bumper warranty. Each class vehicle also carries a five-year/100,000 mile "Drivetrain" express written warranty.

On or around May 7, 2010, Aguilar purchased a 2010 Chevrolet Traverse from an authorized Chevrolet dealer in Clovis, California.

On or around August 24, 2010, at approximately 8,935 miles, Aguilar took the vehicle to the Clovis dealership after experiencing vibrations and loud noises in the steering wheel and general instability in the steering column during the normal course of driving. The dealership replaced the CV

1 joint band accompanying boot in an effort to repair the issue.

2 Aguilar experienced the same noises and took his vehicle to a different authorized Chevrolet
3 dealership for repairs on or around October 14, 2010 at approximately 11,217 miles.  The dealership
4 replaced the intermediate steering shaft.

5 Aguilar continued to experience the noises from the steering system, and brought his vehicle
6 back to the dealership in Clovis on or around October 27, 2010 at approximately 11,796 miles.  The
7 dealership replaced the rack gear.

8 On or around December 22, 2011, at approximately 30,489 miles, Aguilar again brought his
9 vehicle to the Chevrolet dealership in Clovis.  The repair order states that Aguilar complained of loud
10 noises from the power steering, that the vehicle is pulling to the left when driving, and will cause the
11 steering wheel to hesitate when turning.  The dealership replaced the power steering pump and the
12 power steering gear assembly.

13 Aguilar alleges that his vehicle continues to suffer from the steering defect that results in loss
14 of power steering, hard steering, forceful pulling to the left and right, and loss of steering control, as if
15 the front end of the vehicle is floating or gliding while driving.  Aguilar further asserts that GM merely
16 replaces the defective steering system parts with the same defective components, and that the repairs
17 are a temporary mask to ensure that the steering defect will manifest outside of the class vehicles'
18 express warranty period.

19 Aguilar purports to bring this action on behalf of a nationwide class of all individuals who
20 purchased or leased a class vehicle manufactured or sold after July 10, 2009.  Aguilar also proposes
21 two California sub-classes of the nationwide class.  The CLRA sub-class consists of members of the
22 nationwide class who reside in California and are "consumers" within the meaning of Cal. Civ. Code §
23 1761(d).  The implied warranty sub-class consists of members of the nationwide class who purchased
24 or leased their class vehicles in California.  Aguilar seeks declaratory and injunctive relief, class
25 certification, compensatory, exemplary, statutory, and punitive damages, attorneys' fees and costs, and
26 pre- and post-judgment interest.

27 **B.     Procedural History**

28 On March 22, 2013, Aguilar filed his original complaint against GM and General Motors

Company for violations of the CLRA, UCL, Song-Beverly Act, Magnuson-Moss Act, and Cal. Comm. Code § 2313. GM and General Motors Company filed a motion to dismiss Aguilar's original complaint on May 17, 2013 for failure to state a claim for which relief can be granted. On June 4, 2013, Aguilar filed a first amended complaint against GM and General Motors Company. On June 19, 2013, upon the stipulation of the parties, this Court ordered the dismissal of defendant General Motors Company. On July 25, 2013, this Court granted in part with leave to amend GM's motion to dismiss Aguilar's first amended complaint. Aguilar filed a second amended complaint on August 14, 2013. On August 28, 2013, GM filed the instant motion to dismiss Aguilar's second amended complaint for failure to state a claim. Aguilar filed an opposition on September 24, 2013, and GM filed a reply on October 1, 2013.

## DISCUSSION

### Motion to Dismiss

**A.    Standard under Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

To survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Ail. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are merely consistent with a

4

defendant's liability, it stops short of the line between possibility and plausibility for entitlement to relief" *Id.* (citing *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a formulaic recitation of the elements ... are not entitled to be assumed true." *Iqbal*, 129 S.Ct. at 1951. A court is "free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Farm Credit Services v. American State Bank*, 339 F.3d 764, 767 (8th Cir. 2003) (citation omitted).

Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D.Cal. 1998). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. Northern California Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

**B.    Analysis**

  1.    **Failure to Disclose Causes of Action – CLRA and UCL**

In his first and second causes of action, Aguilar alleges that GM violated the CLRA and the UCL's fraudulent business practices prong in "knowingly and intentionally concealing material facts" from Aguilar and the purported class by "failing to disclose and concealing the defective nature of the steering system." (Doc. 14, ¶¶ 82, 86, 103). Therefore, these claims sound in fraud.

  a.    **Fed. R. Civ. P. 9(b)**

"If the claim is grounded in fraud, the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Cardenas v. NBTY, Inc.*, 870 F. Supp. 2d 984, 993 (E.D. Cal.

5

2012) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)). "[T]he Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, [and] it (as any other fraud claim) must be pleaded with particularity under Rule 9(b). *Kearns*, 567 F.3d at 1127. Moreover, "[t]he Ninth Circuit has specifically held that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL." *Id.* at 992 (citing *Kearns*, 567 F.3d at 1125). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotations and ellipses omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superceded by statute on other grounds*.

### b. Duty to Disclose

"California courts have generally rejected a broad obligation to disclose[.]" *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012). As relevant here, "a failure to disclose or concealment can constitute actionable fraud" where "the defendant had exclusive knowledge of material facts not known to the plaintiff" or where "the defendant actively conceals a material fact from the plaintiff[.]" *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) (citing *LiMandri v. Judkins*, 52 Cal.App.4th 326, 337 (1997)). However, "a manufacturer is not liable for a fraudulent omission concerning a latent defect under the CLRA, unless the omission is 'contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose.'" *Wilson*, 668 F.3d at 1141 (quoting *Daugherty v. American Honda Motor Co.*, 144 Cal.App.4th 824 (Cal. Ct. App. 2006)). "A manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue."[1] *Id.* (citing *Oestreicher v.*

---

[1] Aguilar alleges that the defects manifested within the warranty period. The Court will address those arguments in the

6

*Alienware Corp.*, 544 F.Supp.2d 964, 969 (N.D.Cal. 2008), *aff'd*, 322 Fed.Appx. 489, 493 (9th Cir. 2009).

### i. Material Facts

As relevant here, a manufacturer's duty to disclose applies only to "material facts." *Falk*, 496 F. Supp. 2d at 1095. Aguilar advocates for the broader interpretation of "material facts" as facts that, if they had been disclosed, would have resulted in a reasonable consumer behaving differently. *Id*. GM argues for a narrower view that, to be actionable, an omission must be of a fact that GM was obligated to disclose because of safety concerns. *Daugherty*, 144 Cal.App.4th at 835. Aguilar alleges that a steering defect resulting in the potential failure of power steering, pulling to the left and right, and loss of steering control while driving would be material to a reasonable consumer. Indeed, such faulty steering systems could lead to unsafe conditions for both drivers and passengers, especially at today's highway speeds. Therefore, Aguilar's allegations show that the alleged steering defect is a material fact under both the broader and the narrower interpretation.

### ii. Knowledge at the Time of Sale

"In order to give rise to a duty to disclose, a complaint must contain specific allegations demonstrating the manufacturer's knowledge of the alleged defect *at the time of sale*." *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 927 (N.D. Cal. 2012) (emphasis in the original). GM argues that Aguilar's alleged facts fail to show that GM had knowledge of the steering defect at the time of sale of Aguilar's vehicle. As this Court previously noted, whether Aguilar has demonstrated this "is a close question." *Id*. With the amended pleadings in the operative complaint, Aguilar adequately alleges GM's knowledge of the steering defect at the time of sale.

Aguilar alleges that GM acquired its knowledge of the steering defect through sources unavailable to Aguilar and the class members, including pre-release testing data, earlier model year versions of the class vehicles equipped with similar steering systems, testing conducted in response to reported complaints, and aggregate data from GM dealers, such as early consumer complaints to GM through their dealers about the steering defect, dealer repair orders and high warranty reimbursement rates. Aguilar further argues that consumers only became aware of the steering defect after purchase or

---

discussion of Aguilar's warranty claims below.

7

lease when they actually experienced the problem. When accepted as true for the purposes of this Fed. R. Civ. P. 12(b)(6) motion, Aguilar's material allegations suffice to show that GM had exclusive knowledge of the alleged steering defect.

Aguilar alleges that GM had knowledge of the steering defect at the time of sale because the class vehicles are substantially similar if not identical to the previous model years manufactured and distributed by Old GM, and the previous model years possessed the same steering defect. Aguilar submits a sampling of consumer complaints regarding steering problems for class vehicles and previous model years that are dated prior to the date of sale of his vehicle. In addition, the pre-release testing data that allegedly shows the steering defect necessarily would have given GM knowledge of the steering defect prior to the date of sale. Moreover, as Aguilar points out, his ability to make more detailed allegations as to the source and contents of GM's exclusive knowledge of the steering defect is limited prior to discovery.

Accepting as true the complaint's allegations and making reasonable inferences in his favor, Aguilar sufficiently alleges that GM had knowledge of the steering defect in the class vehicles at the time of sale of his vehicle. Because GM had knowledge of the steering defect, the steering defect constituted material information, and GM did not disclose the defect, the Court DENIES GM's motion to dismiss Aguilar's duty to disclose claims under the CLRA and the UCL.

2. **Other UCL Claims**

The UCL prohibits business practices which are unlawful, unfair, or fraudulent. Cal. Bus. & Prof. Code § 17200.

i. **Unlawful**

The UCL "borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." *Cel–Tech Commc'ns., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999). Aguilar's unlawfulness claim is premised on GM's alleged violations of the Song-Beverly Act, the Magnuson-Moss Act, and Cal. Comm. Code § 2313. As discussed below, Aguilar sufficiently states a claim for violation of the Song-Beverly Act against GM. However, Aguilar's express warranty claims against GM are subject to dismissal. Nonetheless, taking Aguilar's allegations as true, Aguilar adequately alleges that GM has acted unlawfully. Therefore, the Court

DENIES GM's motion to dismiss Aguilar's claim for violation of the UCL's prohibition of unlawful business practices.

### ii.     Unfair

California courts traditionally have applied a balancing test in analyzing claims under the UCL's unfairness prong. Under this test, "the determination of whether a particular business practice is unfair necessarily involves an examination of its impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer." *Motors, Inc. v. Times Mirror Co.*, 102 Cal.App.3d 735, 740 (Cal. Ct. App. 1980); *see also*, *People v. Casa Blanca Convalescent Homes Inc.*, 159 Cal.App.3d 509, 530 (Cal. Ct. App. 1984) (stating that a practice in California is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."). In *Cel–Tech*, however, the California Supreme Court rejected that test for claims brought by competitors, and instead held that, "any finding of unfairness ... [must] be tethered to some legislatively declared policy." 20 Cal.4th at 185. However, because *Cel–Tech* expressly limited its holding to competitor lawsuits, the appropriate test to determine whether a practice is "unfair" in a consumer case under California law remains uncertain. *See*, *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735 (9th Cir. 2007) ("California's unfair competition law, as it applies to consumer suits, is currently in flux.").

Because it has been used more widely and analyzed more thoroughly by California courts, this Court applies the traditional balancing test in this consumer claim. Here, Aguilar alleges that GM sold class vehicles with a steering defect that could result in serious safety issues to consumers. This defect could manifest, as it did in Aguilar's vehicle, within the implied warranty period. Aguilar further alleges that, where the defect manifested within the express warranty period, GM merely replaced the steering components with the same defective parts to ensure that, when the defect again manifests, it will fall outside of the express warranty period. Taking these allegations as true, Aguilar sufficiently alleges that such business practices by GM, if proven, are "unscrupulous or substantially injurious to consumers." *Casa Blanca*, 159 Cal.App.3d at 530. Therefore, the Court DENIES GM's motion to dismiss Aguilar's claim for violation of the UCL's prohibition of unfair practices.

### 3.     Warranty Causes of Action

### i.         Breach of Implied Warranty under Song-Beverly Act

Aguilar claims that GM breached the implied warranty of merchantability under the Song-Beverly Act by selling class vehicles that are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the class vehicles suffered from the steering defect at the time of sale and thereafter. GM argues that Aguilar's Song-Beverly Act claim is untimely because the maximum duration of the implied warranty is one year after the purchase date.

The Song-Beverly Act was enacted "to regulate warranties and strengthen consumer remedies for breaches of warranty." *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 944 (C.D. Cal. 2012). Under the Act, an implied warranty of merchantability guarantees that "consumer goods meet each of the following: (1) Pass without objection in the trade under the contract description; (2) Are fit for the ordinary purposes for which such goods are used; (3) Are adequately contained, packaged, and labeled; (4) Conform to the promises or affirmations of fact made on the container or label." Cal. Civ.Code § 1791.1(a). "[T]he implied warranty of merchantability set forth in § 1791.1(a) requires only that a vehicle be reasonably suited for ordinary use. It need not be perfect in every detail so long as it provides for a minimum level of quality." *Keegan*, 838 F. Supp. 2d at 945 (internal citation omitted). "The basic inquiry, therefore, is whether the vehicle was fit for driving." *Id*. *See*, *Carlson v. General Motors Corp*., 883 F.2d 287, 297 (4th Cir. 1989) ("Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a safe condition and substantially free of defects. Thus, where a car can provide safe, reliable transportation, it is generally considered merchantable."). "California courts 'reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.'" *Keegan*, 838 F. Supp. 2d at 946 (quoting *Isip v. Mercedes–Benz USA, LLC*, 155 Cal.App.4th 19, 27 (Cal. Ct. App. 2007)).

Here, Aguilar claims that the class vehicles are unfit for the ordinary use of driving due to a steering defect that can result in potential failure of power steering, pulling to the left and right, and loss of steering control during the normal course of driving. Such a defect would render a vehicle unfit for driving.

Further, GM's argument that Aguilar's implied warranty claim is untimely lacks merit on its face. Aguilar has alleged that his vehicle experienced general instability in the steering column and vibrations in the steering wheel, along with noises, within one year of purchasing his vehicle. As other courts have recognized, "[w]hether a car provides a 'minimum level of quality' is not determined by the manner in which it is operating at the time of sale." *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1243 (C.D. Cal. 2011). Aguilar also sought repairs for his vehicle for pulling to the left when driving and steering wheel hesitation when turning in December 2011, about nineteen months after purchasing his new vehicle. "A vehicle that operates for some time after purchase may still be deemed 'unfit for ordinary purposes' if its components are so defective that the vehicle becomes inoperable within an unacceptably short period of time." *Id*.

Therefore, Aguilar has pleaded adequately a cause of action against GM for violation of the implied warranty of merchantability under the Song-Beverly Act. The Court DENIES GM's motion to dismiss Aguilar's third cause of action.

### ii. Breach of Express Warranty

In his fourth and fifth causes of action, Aguilar alleges that GM breached its express written warranty by extending the basic and Drivetrain warranties with the purchase or lease of each class vehicle, selling class vehicles with the steering defect, "[r]efusing to honor the express warranty by repairing or replacing, free of charge, the steering system or any of its components or programming and instead charging for repair and replacement parts," and "[p]urporting to repair the steering system and its component parts by replacing the defective steering components with the same defective components and/or instituting temporary fixes to ensure that the Steering Defect manifests outside of the Class Vehicles' express warranty period." (Doc. 33, ¶¶ 140, 153).

Aguilar again alleges no facts to show that GM ever charged him or any class member for repairs and parts during the express warranty period.

Also, California courts have made clear that an express warranty claim cannot be based on "defects that lead to a malfunction after the term of the warranty." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 832 (2006). The plaintiff in *Mui Ho v. Toyota Motor Corp*. similarly alleged that "[b]y replacing a defective part with another defective part in [Plaintiff Ho's] vehicle in

11

January 2008 ... [TMS] breached its NVLW because it failed to 'correct [the] defect' under its warranty." 931 F. Supp. 2d 987, 994 (N.D. Cal. 2013). The court, applying *Daugherty*'s reasoning, held that "the fact that the problem arose again after the warranty period, in 2010 and 2012, cannot be the basis of a breach of express warranty claim," and dismissed the claim with prejudice *Id*. Here, Aguilar alleges that GM violated the express warranty by replacing defective components with other defective components such that the malfunction occurred outside the warranty period. As in *Mui Ho*, this argument fails. GM complied with the warranty by repairing Aguilar's vehicle during the warranty period. The malfunction of Aguilar's vehicle outside of the warranty period cannot serve as the basis of a breach of express warranty claim. *See*, *Long v. Hewlett-Packard Co*., 2007 WL 2994812 at *5 (N.D. Cal. July 27, 2007) *aff'd*, 316 F. App'x 585 (9th Cir. 2009) (holding that, where plaintiff argued defendant violated express warranty by "replac[ing] one defective inverter with another," "a plaintiff cannot maintain a breach of warranty claim under California law for a product that is repaired within the warranty period and fails again months after the warranty has expired.").

Further, since Aguilar does not allege that GM otherwise violated the Magnuson-Moss Act, his federal claim for breach of express warranty fails along with his state law claim. *Clemens v. DaimlerChrysler Corp*., 534 F.3d 1017 (9th Cir. 2008) (finding that claims under the Magnuson–Moss Act stand or fall with express and implied warranty claims under state law, as the Act borrows state law causes of action.).

Because Aguilar fails to make sufficient allegations to show that GM breached its express written warranty, the Court GRANTS GM's motion to dismiss Aguilar's fourth and fifth causes of action under the Magnuson-Moss Act and Cal. Comm. Code § 2313, respectively.

**CONCLUSION AND ORDER**

For the reasons discussed above, the Court

1. DISMISSES WITHOUT LEAVE TO AMEND Plaintiff Chris Aguilar's fourth cause of action under the Magnuson-Moss Act, and fifth cause of action under Cal. Comm. Code § 2313;

2. DENIES Defendant General Motors LLC's motion to dismiss Plaintiff Aguilar's first cause of action under the CLRA, second cause of action under the UCL, and

third cause of action under the Song-Beverly Act; and

3. ORDERS Defendant General Motors LLC, no later than November 7, 2013, to file and serve a F.R.Civ.P. 7(a)(2) answer to the second amended complaint.

IT IS SO ORDERED.

Dated:   **October 16, 2013**          **/s/ Lawrence J. O'Neill**
UNITED STATES DISTRICT JUDGE